B27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT

Middle _____ District of Pennsylvania

In re John Galbraith _____ ___ ___ _           Case No. _12-04861_ __ __ _._
       Debtor    ,                              Chapter _7_ .

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1.    Creditor's Name: CAPITAL ONE, N.A. - BEST BUY CO., INC.

2.    Amount of the debt subject to this reaffirmation agreement:
     $_2520.57_ on the date of bankruptcy     $2,520.57 _ to be paid under reaffirmation agreement

3.    Annual percentage rate of interest: ___ __% prior to bankruptcy
     _0_ % under reaffirmation agreement ( _✓_ Fixed Rate _ __ Adjustable Rate)

4.    Repayment terms (if fixed rate): $_71.00_ per month for __36__ months

5.    Collateral, if any, securing the debt: Current market value: $__ _2520.57_
     Description: _INSIGNIA 47"LCD,SONY SPKS,WALL MOUNT _ __ _____ ___.

6.    Does the creditor assert that the debt is nondischargeable? __ Yes _✓_ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | Debtor's Income and Expenses as Stated on Reaffirmation Agreement |
|---|---|
| 7A.   Total monthly income from Schedule I, line 16   $3,365.60 | 7B.   Monthly income from all sources after payroll deductions   $3,365.60 |
| 8A.   Total monthly expenses from Schedule J, line 18   $4,905.56 | 8B.   Monthly expenses   $4,905.56 |
| 9A.   Total monthly payments on reaffirmed debts not listed on Schedule J   $0 | 9B.   Total monthly payments on reaffirmed debts not included in monthly expenses   $0 |
| | 10B.   Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.)   (-$1539.96) |

B27 (Official Form 27) (12/09)                                                          Page 2

11.   Explain with specificity any difference between the income amounts (7A and 7B):

      _____
      _____

12.   Explain with specificity any difference between the expense amounts (8A and 8B):

      _____
      _____

      If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that
any explanation contained on those lines is true and correct.


      _____              _____
      Signature of Debtor (only required if        Signature of Joint Debtor (if applicable, and only
      line 11 or 12 is completed)                   required if line 11 or 12 is completed)

Other Information

☐     Check this box if the total on line 10B is less than zero. If that number is less than zero, a
presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with
specificity the sources of funds available to the Debtor to make the monthly payments on the
reaffirmed debt: _____
_____

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
      ✓   Yes          _____ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has
counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
      _____ Yes          ✓  No


                              FILER'S CERTIFICATION

      I hereby certify that the attached agreement is a true and correct copy of the reaffirmation
agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.


                              Signature _____

                              _____
                              Jennifer Pursley
                              Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (04/10)

Check one.
☐ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

Middle  District of Pennsylvania

In re ___John Galbraith___,
              *Debtor*

Case No. 12-04861

Chapter 7

## REAFFIRMATION DOCUMENTS

Name of Creditor: CAPITAL ONE, N.A. - BEST BUY CO., INC.

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: ___Secured revolving account___

*For example, auto loan*

B. *AMOUNT REAFFIRMED*:    $___2520.57___

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is ___0___%.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

B240A, Reaffirmation Documents                                          Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑ $ _71.00_ per month for _36_ months starting on _2/20/13_

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

_____

_____

_____

E. Describe the collateral, if any, securing the debt:

Description:                    INSIGNIA 47"LCD,SONY SPKS,WALL MOUNT
Current Market Value   $ _____ 2520.57

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?      $ _____

☐ No.  What was the amount of the original loan?            $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|                                          | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|------------------------------------------|-----------------|-----------------|
| Balance due *(including fees and costs)* | $ 2,520.57      | $ 2520.57       |
| Annual Percentage Rate                   | _____ %       | 0 %             |
| Monthly Payment                          | $ _____       | $ 71.00         |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

_____

_____

# PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.   ☑ Yes      ☐ No

B. Is the creditor a credit union?

Check one.   ☐ Yes      ☑ No

B240A, Reaffirmation Documents                                                Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

  1.   Your present monthly income and expenses are:

       a. Monthly income from all sources after payroll deductions
       (take-home pay plus any other income)                        $3,365.60

       b. Monthly expenses (including all reaffirmed debts except
       this one)                                                     $4,905.56

       c. Amount available to pay this reaffirmed debt (subtract b. from a.)   $(1,539.96)

       d. Amount of monthly payment required for this reaffirmed debt   $71.00

       *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to
       pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption
       of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No
       Presumption of Undue Hardship."*

  2.   You believe that this reaffirmation agreement will not impose an undue hardship on you or your
       dependents because:

       Check one of the two statements below, if applicable:

       ☐   You can afford to make the payments on the reaffirmed debt because your monthly income is
           greater than your monthly expenses even after you include in your expenses the monthly
           payments on all debts you are reaffirming, including this one.

       ☑   You can afford to make the payments on the reaffirmed debt even though your monthly income
           is less than your monthly expenses after you include in your expenses the monthly payments on
           all debts you are reaffirming, including this one, because:

           _____
           _____
           _____

       Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following
statement, if applicable:

       ☐   You believe this Reaffirmation Agreement is in your financial interest and you can afford to
           make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1)    I agree to reaffirm the debt described above.

(2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 10|11|12      Signature _____
                                          *Debtor*

Date 10|11|12      Signature _____
                                       *Joint Debtor, if any*


### Reaffirmation Agreement Terms Accepted by Creditor:

Creditor ___CAPITAL ONE, N.A. - BEST BUY CO., INC.___    C/O Bass & Associates, P.C., 3936 E. Ft. Lowell Ste 200, Tucson, AZ, 85712

Jennifer Pursley                                    _____    10/29/12
*Print Name of Representative*                           *Signature*                    *Date*


## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____    Signature of Debtor's Attorney _____

                       Print Name of Debtor's Attorney _____

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

## A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6.    **When will this Reaffirmation Agreement be effective?**

    **a. If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

        **i. if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

        **ii. if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

    **b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7.    **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

**B.    INSTRUCTIONS**

1.    Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2.    Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3.    If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4.    You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5.    *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

## C.   DEFINITIONS

1.   **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.   **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.   **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

B240B (Form B240B) (12/09)

# UNITED STATES BANKRUPTCY COURT

Middle ___ ___ **District of** Pennsylvania

In re John Galbraith _____,        Case No. 12-04861 ... ........
                    *Debtor*

                                                 Chapter__7__ ... .. ...____

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because *(provide any additional relevant reasons the court should consider)*:

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed: _____
       *(Debtor)*

       _____
       *(Joint Debtor, if any)*

Date: 10|11|12 _____

B240C (Form B240C) (12/09)

# United States Bankruptcy Court

Middle                    District of    Pennsylvania

In re  John Galbraith                          ,                Case No.  12-04861
                        Debtor                              Chapter   7

## ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) _____ , has (have) filed a motion for approval of the reaffirmation agreement dated _____  made between the debtor(s) and creditor _____ . The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____ (date).

COURT ORDER:       ☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: _____

_____
*United States Bankruptcy Judge*

**BEST BUY**
00014423
STROUDSBURG , PA 18360
Store Phone Number 570 476 1421

SALE

| Order: | Date: 09/05/11 04:41 PM | | Term ID: 086 Cashier#: 00152937 |
|---|---|---|---|

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 6094193 | REWARD ZONE PREMIER SILVER | 1 | 0.00 |
| 8632875 | INSIGINA 47" 1080P LCD TV | 1 | 600.00 |
| 2239332 | SONY RDPX60IP IPOD/IPHONE SP | 1 | 160.00 |
| 9847895 | SANUS LARGE FULL MOTION WALL | 1 | 359.99 |

|  |  |
|---|---|
| Subtotal | 1119.99 |
| Tax | 67.20 |
| Total | 1187.19 |

Acct#:           6190
Payment Type. BBY CARD/HSBC
Amount: 1187.19
Card Type: PL2
Tran#: 14420899
Auth#: 057092
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL
RETURN AND REFUND POLICIES
PRINTED ON THE BACK OF THIS
RECEIPT AND POSTED IN THE
STORE. I HAVE RECEIVED GOODS
AND/OR SERVICES IN THE AMOUNT
SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE
INFORMATION AND PRICE MATCH POLICY
MAY VARY SLIGHTLY FROM IN-STORE POLICY.
PLEASE LOG ONTO WWW.BESTBUY.COM
FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement (including a Statutory Terminable Marital Property Classification Agreement under Sec. 766.588 Wis. Stats., or a Statutory Terminable Individual Property Classification Agreement under 766.70) adversely affects the interest of the creditor unless the creditor prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

## CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT

**1. GENERAL:** Each person signing and submitting, or electronically submitting the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with Household Bank (SB), N.A., a national banking association, and requests one or more credit card(s) bearing the name or tradename of Best Buy to be used in connection with the Account. The word "Card" means any credit card(s) issued to you or as an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the credit card application and the words "us", "us" and "our" refer to Household Bank (SB), N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144.

If we accept your application to open an Account, you agree that you will only purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. ACCEPTANCE OF AGREEMENT:** by a) signing and submitting, or electronically or telephonically submitting the application, using or permitting others to use the Card, b) signing or permitting others to sign sales slips or c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement, which includes an arbitration provision.

**3. PROMISE TO PAY:** You agree to pay all amounts charged to the Account, whether incurred by you or anyone you authorize or permit to use your Account or Card. If the Account is a joint Account, the applicant and joint applicant each agree to pay and are jointly and individually responsible for all amounts charged on the Account regardless of any divorce or other legal proceedings or any agreement that may affect liability between the applicant and the joint applicant. If either of you give us notice disclaiming liability for amounts owed under this Agreement, we may close the Account. In that event, you will continue to pay the outstanding balance under the terms of this Agreement. However, you will not be able to make any new charges on the Account.

**4. ABILITY TO REPAY:** When you use the Account or permit others to use the Account, you represent that you have the ability and intention to repay all amounts charged to the Account.

**5. BILLING STATEMENT:** We will send you a billing statement monthly for each billing cycle at the end of which you have a debit or credit balance in excess of $1.00, or in which a Finance Charge has been imposed. The billing statement will show all purchases, Finance Charges and other charges or fees, including credit insurance or debt cancellation (if applicable), and all payments and other credits posted to your Account during the billing cycle. The billing statement will show the amount owed on your Account. The total Amount owed is called "New Balance" on your billing statement subject to the terms of Promotional Credit Plan purchases, if any, as indicated below.

**6. PROMOTIONAL CREDIT PLANS:** The following Promotional Credit Plans may be offered from time to time as specified prior to or at the time of purchase. a) Delayed Monthly Payment Credit Plan – no Minimum Monthly Payment will be due for a specified period. b) Waived Finance Charge Credit Plan – no Finance Charges will be imposed on the purchase for a specified period, as long as the Total Minimum Payment Due is paid when due each billing cycle. c) Waived Finance Charge/Delayed Monthly Payment Credit Plan – no Finance Charges will be imposed on the purchase for a specified period and no Minimum Monthly Payments will be due for a specified period. d) Same As Cash/Monthly Payment Credit Plan – If you pay the full cash sales price of the purchase before the promotional due date, as indicated on your billing statement, and pay the Total Minimum Payment Due when due each billing cycle, as indicated on your billing statement, no Finance Charges will be imposed on the purchase. If such payments are not so made, Finance Charges will be imposed from the purchase date. e) Same As Cash/Delayed Monthly Payment Credit Plan – If you pay the full cash sales price of the purchase before the promotional due date indicated on your billing statement, no Finance Charges will be imposed on the purchase. If payment in full is not made before that date, Finance Charges will be imposed from the purchase date. No Minimum Monthly Payments will be due prior to the promotional due date as indicated on your billing statement. f) Reduced Rate Credit Plan – A reduced periodic rate will be applied to the purchase for the specified period as long as the Total Minimum Payment Due is paid when due each billing cycle. g) Special Repayment Factor Plan – A special repayment factor will be applied to the purchase for the specified period as long as the Total Minimum Payment Due is paid when due each billing cycle. h) Special Repayment Factor/Reduced Rate Credit Plan – A special repayment factor and a reduced periodic rate will be applied to the purchase for the specified period as long as the Total Minimum Payment Due is paid when due each billing cycle. All purchases that do not fall under a Promotional Credit Plan are referred to as Regular Credit Plan purchases. Certain rules apply to the allocation of payments and finance charges on your promotional purchase if you make more than one purchase on your Card. Call 1-888-367-4310 or review the Application of Payments section of this Agreement for information.

**7. FINANCE CHARGES:** (a) Finance Charges, which are part of the interest on your Account, are calculated separately for each Promotional Credit Plan and each Regular Credit Plan (each a "Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Finance Charge for the billing cycle is the sum of the Finance Charges for each Credit Plan, subject to the minimum Finance Charge under Section 8.

**(b)** Finance Charges are imposed on purchases from the transaction date and not paid in full, except that no Finance Charge is imposed in a billing cycle ("Current Cycle") on:

(i) a new purchase on a Regular, Delayed Monthly Payment, Reduced Rate, or Special Repayment Factor Credit Plan of the combined Previous Balance of those Credit Plans at the beginning of the Current Cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Current Cycle;

(ii) any purchase on a Regular, Delayed Monthly Payment, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the Current Cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Current Cycle and the combined Same Credit Plans at the beginning of the previous billing cycle ("Previous Cycle") is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Previous Cycle;

(iii) a purchase on a Waived Finance Charge Credit Plan for the applicable promotional period;

(iv) a purchase on a Same As Cash Credit Plan if the full cash sales price is paid in full before the promotional due date.

**(c)** If a Finance Charge is imposed on a Credit Plan other than a Same As Cash Credit Plan in the Current Cycle, the amount will be the sum of the following daily Finance Charge calculations for the Credit Plan during the Current Cycle and (if applicable) the previous billing cycle ("Previous Cycle"): (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the Current Cycle; and (ii) the applicable Daily Periodic Rate for the Previous Cycle times the Daily Balance of any new purchases on the Credit Plan during the Previous Cycle on which Finance Charges were not imposed during the Previous Cycle.

**(d)** If a Finance Charge is imposed on a Same As Cash Credit Plan, the amount will be the sum of the following daily Finance Charge calculations for the Credit Plan during the Current Cycle and each of the prior billing cycles (each a "Prior Cycle") from the transaction date of the purchase until the Current Cycle: (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the Current Cycle; and (ii) the applicable Daily Periodic Rate for each Prior Cycle times the Daily Balances of the Credit Plan for each day during each Prior Cycle.

**(e)** The "Daily Balance" of a Credit Plan is determined by taking the opening balance of the Credit Plan for that day, adding any new purchases made on the Credit Plan that day and subtracting any payments or credit applied to the Credit Plan that day. For purposes of determining the Daily Balance of the Previous Cycle, the only purchases considered are new purchases on which Finance Charges were not imposed in the Previous Cycle. The previous day's Finance Charges and credit insurance premiums of debt cancellation fees (if applicable) are included in the Daily Balance of a Credit Plan, except that for any Same As Cash Credit Plans and all Regular Credit Plans, late fees, overlimit fees, returned check fees and other fees on the Account are added to the Daily Balance of a Credit Plan when imposed. If a purchase on a Credit Plan posts after the beginning of a billing cycle, but the transaction occurred prior to the beginning of the billing cycle, the amount of the transaction plus related Finance Charges outstanding on each day from the transaction date until the first day of the billing cycle in which the transaction posts will be added to the Daily Balance of the Credit Plan for the first day of the billing cycle in which the transaction posts.

**(f)** The Daily Periodic Rate which is used to determine your Finance Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the highest of the Prime Rate(s) published in The Wall Street Journal's "Money Rates Section" on the first or last day of the month that The Wall Street Journal is published, plus a "Spread" of 14.4 percentage points for the Default Rate, and a "Spread" of 18.4 percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month.

The minimum rate of Finance Charge for the Standard Rate is a Daily Periodic Rate of .05425% (corresponding 19.8% Annual Percentage Rate). The minimum rate of Finance Charge for the Default Rate is a Daily Periodic Rate of .06521% (corresponding 23.8% Annual Percentage Rate). For example, as of the billing cycle beginning March 1, 2005, the Finance Charge for the Standard Rate would have been a Daily Periodic Rate of .05425% (corresponding 19.8% Annual Percentage Rate). The Finance Charge for the Default Rate would have been a Daily Periodic Rate of .06521% (corresponding 23.8% Annual Percentage Rate). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Finance Charge and the Minimum Monthly Payment due on your Account. You will qualify for the Standard Rate until you have failed to make two consecutive total Minimum Payments Due and are 30 days past due.

**8. MINIMUM FINANCE CHARGE:** A minimum Finance Charge of $2.00 will be assessed for each billing cycle in which a Finance Charge is payable.

**9. FEES:** We may impose on your Account the following fees, which will be added to your Account when assessed:

a) **Late Payment Fee:** Your Late Payment Fee will be based on your combined account balance after any Delayed Monthly Payment credit plan balances at the time of your payment due date. If you fail to pay us the total Minimum Payment Due in full by the Payment Due Date on your billing statement, you agree to pay a Late Payment Fee of $10 for combined account balances of $100 and below; $25 for combined account balance of $100.01 to $1000.00; and $35 for combined account balance of $1000.01 and over.

b) **Returned Check Fee:** You agree to pay $25 each time any payment check on your Account is returned unpaid by your bank or other financial institution for any reason

c) **Document and Research Fees:** If you ask us to provide you with a replica of your sales slip, billing statement or other document (except in connection with a billing error) claimed (in accordance with "Your Billing Rights"), we may charge you the following fees: (i) Billing statement: $5 per document; (ii) Sales/credit slip: $5 per document; (iii) Payment instrument: $5 per document; (iv) Research fee: $15 per hour (including payment histories). We reserve the right to charge the Document and Research Fee Schedule from time to time. You may call Customer Service for a current fee schedule.

d) **Replaced Card Fee:** You may be charged $5 each time you request that your credit card be reissued.

e) **Direct Check Fee:** In the event that you pay your Account with a direct check, you agree to pay up to a $15 fee for each direct check. We reserve the right to change the Direct Check Fee from time to time. You may call Customer Service for a current fee schedule.

f) **Overlimit Fee:** In the event you exceed your credit limit, you will be charged an Overlimit Fee of $25.

g) **Collection Costs:** If, after you default, we refer your Account to an attorney and/or collection agency for collection, we may charge you our collection costs, including court costs and reasonable attorneys' fees, when and as permitted by applicable law.

**10. INSURANCE:** If available and you elect any credit insurance coverage, you authorize us to charge the insurance premium for such insurance to your Account on a monthly basis. You understand the amount of the insurance premium is based on the Average Daily Balances of your Account for the billing cycle in which the premium is being assessed. Credit insurance charges begin to accrue on the transaction date for all purchases made on your Account.

**11. DEBT CANCELLATION:** If available and you elect debt cancellation, you authorize us to charge the fee for such debt cancellation to your Account on a monthly basis. You understand the amount of the debt cancellation fee is based on the Average Daily Balances of your Account for the billing cycle in which the fee is being assessed. Debt cancellation charges begin to accrue on the transaction date for all purchases made on your Account.

**12. MINIMUM MONTHLY PAYMENT:** Your monthly billing statement will include requirements for you to follow in making payments including the cut-off hour for receipt of payments, which may affect crediting of your payments. You agree to pay us at least the Total Minimum Payment Due, reflected on your statement. If you wish, you may pay more than the Total Minimum Payment Due and at any time you may pay the entire amount due. The Minimum Monthly Payment is the greater of $10 plus any debt cancellation fees (if applicable), or 2.25% of the "New Balance" of each Promotional Credit Plan which requires a Minimum Monthly Payment (except for Special Repayment Factor Credit Plans) and all Regular Credit Plans, as shown on your billing statement rounded to the next higher dollar, plus any debt cancellation fees (if applicable). All Minimum Monthly Payments are then combined into the Total Minimum Monthly Payment.

**13. PAYMENT RESTRICTIONS:** All payments must be mailed or delivered to us at the Payment Processing Center address shown on your monthly billing statement. All payments must be made by check or money order. You may not pay with out-of-pocket us-cash. You agree that any payment may be returned to you if your check or (a) not drawn in U.S. dollars on funds on deposit in the U.S.; (b) missing a signature; (c) drawn with different numeric and written amounts; (d) restrictively endorsed; (e) postdated; (f) drawn on a credit account issued by Household Bank (SB), N.A. or an affiliate (g) not paid on presentment. However, if you wish us to consider a payment marked "paid in full", "without recourse", or similar language, such payment must be marked for special handling and sent to HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521. You agree that we may accept any such payment, late payments, partial payments, and payments marked "paid in full", "without recourse", or otherwise restrictively endorsed without waiving our right to payment in full of your entire Account balance.

**14. APPLICATION OF PAYMENTS:** Your payments will be allocated to 2 manner we determine in accordance with applicable law, and may change from time to time. Your available Credit will be increased by the amount of your payment within 14 days after that payment is received. If you have a Same As Cash Credit Plan that is due to expire in the current billing cycle or in the next billing cycle, and you make a payment before the Same As Cash expiration date that is large enough to pay all minimum payments due plus your full Same As Cash balance, we will automatically apply that payment first to the required minimum payments and next to the plan that is due to expire. At all other times, payments will be applied in the following order: (1) minimum payments that are due, (2) plans with finance charges due, (3) Same As Cash Credit Plans in the order in which they are due to expire. If you wish to re-direct any payment in a different order, you may do so by calling the customer service number listed in the upper corner of page 1 of your billing statement.

**15. CREDIT LIMIT:** Once you agree not to let the Account balance exceed the credit limit established for you by us from time to time. We do not have to honor any use of your Card or honor credit card checks which would cause you to exceed your credit limit, but if we do, you agree to repay the amount by which your credit limit is exceeded, plus Finance Charges immediately.

**16. CREDIT AUTHORIZATIONS:** Some purchases will require our prior authorization and you may be asked by the merchant to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen. We are not responsible for the refusal of any merchant to accept or honor the Card or a credit card check.

**17. SECURITY:** Except as indicated below, you grant us a purchase money security interest in the goods purchased with your Card. For purposes of determining which items are subject to a security interest, payments received will be deemed to be applied first to any unpaid insurance premiums or debt cancellation fees (if applicable), Finance Charges, and fees, and then to pay for purchases on the Account in the order in which they were made. When sufficient payments are made to repay the portion of the Account balance attributable to the purchase of a particular good, we will release our purchase money security interest in that good. Goods covered by a security interest may be taken from you if you do not pay on time. We may require you to make them available at a convenient place of our choice. We waive any security interest in your home if the goods are installed and in any goods purchased with credit card checks. We take no security interest in goods where the original purchase price is less than $200 if you live in New York and in goods where the original purchase price is less than $700 if you live in Maryland. If we repossess any goods purchased with your Card, we may charge you our repossession costs including, but not limited to, necessary repair, storage fees and costs of sale, when and as permitted by law.

**18. DEFAULT:** You will be in default under this Agreement upon: (a) your failure to make at least the Total Minimum Payment Due when due; (b) your violation of any other provision of this Agreement; (c) your death; (d) your becoming the subject of bankruptcy or insolvency proceedings; (e) your becoming the subject of attachment, foreclosure, repossession, lien, judgement or garnishment proceedings; (f) your supplying us with misleading, false, incomplete or incorrect information; (g) our receipt of information that you are unable or unwilling to perform the terms or conditions of this Agreement; (h) your failure to supply us with any information we reasonably deem necessary; (i) our receipt of information from third parties, including credit reporting agencies, which indicates a delinquency or charge-off with other creditors; (j) your default under any other loan or agreement you have with us or any of our affiliates; (k) your running out of the U.S. or Canada or providing us with a non-U.S. or non-Canadian mailing address; (l) your becoming incompetent; (m) your exceeding your credit limit; (n) your payment check being returned unpaid by your bank for any reason; and (o) any credit card check being returned unpaid by us; or (p) your being in default under any other agreement or security agreement you have with us or with one of our affiliates.

Upon default, we have the right to (a) terminate your credit privileges under this Agreement, (b) terminate any Promotional Credit Plans and convert balances to a Regular Credit Plan, (c) require you to pay your entire Account balance including Promotional Credit Plan balances, all accrued but unpaid Finance Charges and other charges provided for in this Agreement immediately and (d) bring an action to collect all amounts owed.

**19. ARBITRATION:** Any claim, dispute, or controversy between you and us (whether based upon contract, tort, intentional or otherwise; constitutional statute; common law; or equity and whether pre-existing, present or future), including lawful claims, counter-claims, cross-claims, and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, and except as provided below the validity, enforceability, or scope of this arbitration provision, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following arbitration administrators: the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"). The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the AAA and the NAF may be obtained by writing to these organizations at the addresses listed below. Our address for service of process under this provision is Household Bank (SB), N.A., P.O. Box 279, Mount Prospect, IL 60056.

Any participation in arbitration bearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. If your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the Administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the Administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the Administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the Administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator loses an award in our favor you will not be required to reimburse us for any fees we have paid to the Administrator or for which we are responsible. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and it requested by either party, provide written reasoned findings of fact and conclusions of law. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator's award will be final and binding except for: (a) any appeal right under the FAA; and (b) any appeal of Claims involving more than $100,000. For such Claims, any party may appeal the award to a three arbitrator panel appointed by the Administrator, which will reconsider de novo (i.e., in its entirety) any aspect or all aspects of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA.

Unless applicable law provides otherwise, the appealing party will pay the appeal's costs (i.e., the amount owed to the Administrator and the arbitrators), regardless of its outcome. However, we will consider in good faith any reasonable request for us to bear up to the full costs of the appeal. This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the Administrator and this arbitration agreement, this arbitration agreement shall govern. Notwithstanding any language in this arbitration provision to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any organization that has in place a formal or informal policy that is inconsistent with and purports to override the terms of this arbitration provision, including the Class Action Waiver Provision defined below:

No class actions or private attorney general actions in court or in arbitration or joinder or consolidation of any claims in Court or in arbitration with other persons, are permitted without the written consent of you or us. The validity and effect of the proceeding sentence (herein referred to as the "Class Action Waiver Provision") shall be determined exclusively by a court and not by the Administrator or any arbitrator. Neither the Administrator nor any arbitrator shall have the power or authority to waive, modify or fail to enforce the Class Action Waiver Provision, or any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. **THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

You may contact, obtain the arbitration rules of, or file a Claim with, AAA or NAF, as follows:

| American Arbitration Association | National Arbitration Forum |
|---|---|
| 335 Madison Avenue | P.O. Box 50191 |
| New York, NY 10017 | Minneapolis, MN 55405 |
| www.adr.org | www.arb-forum.org |

As used in this arbitration provision, the term "we", "us", and "our" shall mean Household Bank (SB), N.A., its parents, subsidiaries, affiliates, predecessors, successors, assigns, and each of their officers, directors, and employees.

**20. CHANGE OF TERMS:** We may change or terminate any terms, conditions, services or features of your Account or this Agreement (including increasing your Finance Charges) at any time. We may also add new terms, conditions, services or features to your Account or this Agreement. We may impose any change in terms or any new terms on your outstanding balance as well as on subsequent transactions and balances. To the extent required by law, we will notify you in advance of any change in terms or any new terms by mailing a notice to you at your address as shown on our records. A change in the Annual Percentage Rate, pursuant to the variable rate provisions of this Agreement, shall not be considered a change in terms under this paragraph.

**21. LIABILITY FOR UNAUTHORIZED USE:** You may be liable for the unauthorized use of your Card. You agree to notify us immediately upon learning of the possible unauthorized use of your Card. You will not be liable for unauthorized use that occurs after you notify us verbally or in writing. You may notify us in writing at Card Security Dept., P.O. Box 15521, Wilmington, DE 19850-5521. In the loss, theft, or possible unauthorized use of your Card. In any case, your liability will not exceed $50. However, unauthorized use does not include use by a person to whom you have given authority to use the Card, and you will be liable for all use by such a person. To terminate this authority, you must retrieve the Card from the previously authorized user and return it to us at HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521, along with a letter explaining why you are doing so.

**22. LOST OR STOLEN CARD:** You agree to notify us immediately if your Card is lost or stolen, or if you think someone is using your Account without your permission. You may notify us by writing us at Card Security Dept., P.O. Box 15521, Wilmington, DE 19850-5521.

**23. LOST OR STOLEN CREDIT CARD CHECKS:** You agree to notify us immediately if any credit card checks are lost or stolen. You may notify us by writing us at Card Security Dept., P.O. Box 15521, Wilmington, DE 19850-5521.

**24. STOP PAYMENT:** Before a credit card check drawn on your Account has been honored, you notify us not to pay it, we will stop payment on the credit card check. You must send a written and signed stop payment order which states the number, payee, amount and date of the credit card check on which payment is to be stopped. If you call, you must confirm the call in writing within 14 days. A written stop payment order will remain in effect for six months, unless renewed in writing.

**25. CARD CANCELLATION:** We can terminate or reduce your credit limit at any time and for any reason subject to the requirements of applicable law. Balances outstanding under this agreement when your credit limit is reduced or terminated will continue to accrue Finance Charges until paid in full and are subject to all terms and conditions of this Agreement. You agree to return your Card(s) to us at any time we request.

**26. CLOSING YOUR ACCOUNT:** You can cancel or close your Account by writing to us at Card Security Dept., P.O. Box 15521, Wilmington, DE 19850-5521. Your notice becomes effective when we receive it. If you cancel or close your Account, you will still be responsible for all amounts owed us according to the terms of this Agreement. You agree to return your Card(s) to us.

se haya impuesto un Cargo de Financiamiento. El estado de facturación indicará todas las compras, Cargos Financieros y otros cargos o bonificaciones, incluido el cargo de crédito o la cancelación de deudo (si correspondiere), y todas las pagos y otros créditos asentados en su cuenta durante el ciclo de facturación. El estado de cuenta indicará la cantidad adeudada en su Cuenta. La cantidad total adeudada se llama "Nuevo Saldo" en su estado de cuenta, sujeto a los términos de las compras bajo el Plan de Crédito Promocional, de haberlo, según se indica a continuación.

**6. PLANES DE CRÉDITO PROMOCIONALES:** Los siguientes Planes de Crédito Promocionales podrían ser ofrecidos en cuando en cuando, según se especifique antes de o en el momento de la compra: a) Plan de Crédito con Pago Mensual Diferido – no le adeuda un Pago Mensual Mínimo durante un período determinado; b) Plan de Crédito con Cargo de Financiamiento Prescindido – no se imponen Cargos de Financiamiento sobre las compras durante un período determinado, siempre y cuando se pague el Pago Total Mínimo Adeudado cuando se vence en cada ciclo de facturación; c) Plan de Crédito con Cargo de Financiamiento Prescindido/Pago Mensual Diferido – no se imponen Cargos de Financiamiento sobre la compra durante un período determinado y no se adeudaran Pagos Mensuales Mínimos durante un período determinado; d) Plan de Crédito Igual que Efectivo/Pago Mensual – Si usted paga el precio de venta total en efectivo de la compra antes de la fecha de vencimiento promocional que se indica en su estado de cuenta, y paga el Pago Total Mínimo Adeudado cuando se vence en cada ciclo de facturación, como se indica en su estado de cuenta, no se impondran Cargos de Financiamiento sobre la compra. Si no se hace el pago por completo en dicha forma, los Cargos de Financiamiento se impondran desde la fecha de compra; e) Plan de Crédito Igual que Efectivo/Pagos Mensuales Diferidos – Si usted paga el precio de venta total en efectivo de la compra antes de la fecha de vencimiento promocional indicada en su estado de cuenta, no se impondran Cargos de Financiamiento sobre la compra. Si no se hace el pago por completo antes de para esa fecha, los Cargos de Financiamiento se impondran desde la fecha de compra. No se adeudaran Pagos Mensuales Mínimos antes de la fecha de vencimiento de la promoción, según se indique en su estado de cuenta; f) Plan de Crédito con Tasa Reducida – Se aplica a la compra una tasa reducida durante el período determinado siempre y cuando se pague el legal el Pago Total Mínimo Adeudado cuando se venza en cada ciclo de facturación; g) Plan con Factor de Pago Especial – Se aplica a la compra un factor de pago especial durante el período determinado siempre y cuando se venza el Pago Total Mínimo Adeudado cuando se venza en cada ciclo de facturación; h) Plan de Crédito con Factor de Pago Especial/Tasa Reducida – Se aplican a la compra un factor de pago especial y una tasa periódica reducida durante el período determinado siempre y cuando se pague el Pago Total Mínimo Adeudado cuando se venza en cada ciclo de facturación. Todas las compras que no correspondan a un Plan de Crédito Promocional se llaman compras en Plan de Crédito Normal. Hay ciertas reglas que se aplican en relación a la asignación de pagos y cargos de financiamiento en su compra promocional si usted hace más de una compra con su tarjeta. Para obtener más información llame al 1-888-387-4310 o vaa el inciso Aplicación de Pagos de este Convenio.

**7. CARGOS DE FINANCIAMIENTO:** (a) Los Cargos de Financiamiento, que son parte del interés sobre su Cuenta, se calculan por separado para cada Plan de Crédito (cada Plan de Crédito Normal (cada uno) llamado un "Plan de Crédito Promocional) y para cada Plan de Crédito Promocionales con fechas de vencimiento o términos diferentes se tratan como Planes de Crédito diferentes. El Cargo de Financiamiento total para cada ciclo de facturación es la cantidad de los Cargos de Financiamiento por cada Plan de Crédito, sujeto al Cargo de Financiamiento mínimo bajo la Sección 8.

(b) Los Cargos de Financiamiento se imponen sobre las compras desde la fecha de la transacción hasta que se paguen por completo, excepto que no se imponen Cargos de Financiamiento en un ciclo de facturación ("Ciclo Actual") sobre:
(i) una compra nueva en un Plan de Crédito Normal, con Pago Mensual Diferido, Tasa Reducida o Factor de Pago Especial si el Saldo Anterior cambiado de esos Planes de Crédito al comienzo del Ciclo Actual es de cero o hay un saldo de crédito, o si se paga por completo antes de la Fecha de Vencimiento del Pago que se cae durante el Ciclo Actual;
(ii) cualquier saldo en un Plan de Crédito Normal, con Pago Mensual Diferido, Tasa Reducida o Factor de Pago Especial, si el Saldo Anterior cambiado de esos Planes de Crédito al comienzo del Ciclo Actual es de cero o hay un saldo de crédito, o si se paga por completo antes de la Fecha de Vencimiento del Pago que se cae durante el Ciclo Actual y el Nuevo Saldo combinado de esos Planes al comienzo del ciclo de facturación anterior ("Ciclo Anterior") es de cero o hay un saldo de crédito, o si se paga por completo antes de la Fecha de Vencimiento del Pago que se cae durante el Ciclo Anterior;
(iii) una compra en un Plan de Crédito con Cargo de Financiamiento Prescindido durante el período promocional determinado;
(iv) una compra en un Plan de Crédito Igual que Efectivo si el precio completo de venta en efectivo se paga por completo antes de la fecha de vencimiento de la promoción.
(c) Si en el Ciclo Actual se impone un Cargo de Financiamiento sobre un Plan de Crédito distinto al Plan de Crédito Igual que Efectivo, la cantidad será la suma de los siguientes cálculos diarios del Cargo de Financiamiento para el Plan de Crédito durante el Ciclo Actual y (si correspondió) el ciclo de facturación anterior ("Ciclo Anterior"): (i) la Tasa Periódica Diaria correspondiente al Ciclo Actual multiplicada por el Saldo Promedio Diario para cada día del Ciclo Actual; y (ii) la Tasa Periódica Diaria correspondiente al Ciclo Anterior multiplicada por los Saldos Diarios de toda compra nueva en el Plan de Crédito durante el Ciclo Anterior en que no se impusieron Cargos de Financiamiento durante el Ciclo Anterior.

(d) Si se impone un Cargo de Financiamiento sobre el Plan de Crédito igual que Efectivo, la cantidad será la suma de los siguientes cálculos diarios del Cargo de Financiamiento para el Plan de Crédito durante el Ciclo Actual y cada uno de los ciclos de facturación anteriores (ésta es el un "Ciclo Anterior"), hasta la fecha de transacción de la compra hasta el Ciclo Actual: (i) la Tasa Periódica Diaria correspondiente al Ciclo Actual multiplicada por el Saldo...

**8. CARGO DE FINANCIAMIENTO MÍNIMO:** Se impondrá un Cargo de Financiamiento mínimo de $2.00 por cada ciclo de facturación en que se deba pagar un Cargo de Financiamiento.

**9. CARGOS:** Nosotros podemos imponer sobre su Cuenta los cargos siguientes, que se agregarán a su Cuenta conforme a las impongas:

(a) Recargo por Pago Moroso...

(b) Recargo por Cheque Devuelto...

(c) Honorarios por Documentos e Investigación...

(d) Cargo por Tarjeta Reexpedida...

(e) Cargo por Cheque Directo...

**10. SEGUROS...**

**11. CANCELACIÓN DE DEUDA...**

**12. PAGO MENSUAL MÍNIMO...**

**13. RESTRICCIONES DE PAGO...**

**14. APLICACIÓN DE PAGOS...**

**15. LÍMITE DE CRÉDITO...**

**16. AUTORIZACIONES DE CRÉDITO...**

**17. GARANTÍA...**

que los pagos recibidos serían aplicables en primer lugar a cualquier prima de seguro o cargo por cancelación deducidas impagas (si correspondiere), cargos financieros y honorarios, y luego al pago de compras en la cuenta, en el orden en que hayan sido realizadas. Cuando se hayan hecho pagos suficientes para cubrir la parte del Saldo de la Cuenta atribuible a la compra de un producto determinado, lo anteramos nuestro derecho de garantía real asociado con ese producto. Se le podrían quitar los productos cubiertos por un derecho de garantía real si usted no paga a tiempo. Podríamos exigirle que les ponga a nuestra disposición en un lugar conveniente seleccionado por nosotros. Nosotros renunciamos a cualquier derecho de garantía real sobre su casa o los productos están instalados y sobre cualquier producto adquirido con Cheques de Tarjeta de Crédito. Nosotros no adquiremos derecho de garantía real sobre productos cuyo precio de compra original es inferior a $200 si usted vive en Nueva York o productos cuyo precio original es inferior a $300 si usted vive en Maryland. En caso de que procediéramos a recuperar la posesión de cualquier artículo adquirido con su tarjeta, es posible que usted deba pagar los cargos de recuperación. Estos incluyen, sin ninguna limitación, las reparaciones necesarias, los cargos de almacenamiento y los costos de venta, cuando y en la forma en que lo permita la ley.

**18. INCUMPLIMIENTO:** Usted estará en estado de incumplimiento según este Convenio cuando: (a) usted no haga por lo menos el Pago Total Mínimo Adeudado cuando se venza; (b) esté en violación de cualquier disposición distinta de este Convenio; (c) usted falleciere; (d) usted sea objeto de procedimientos de bancarrota o insolvencia; (e) usted sea objeto de procedimientos de embargo, ejecución de hipoteca, reposesión, gravamen, juicio o documento; (f) usted nos proporcione información engañosa, falsa, incompleta o incorrecta; (g) nosotros rechacemos información de que usted se incapaz de o de que no quiere cumplir los términos o condiciones de este Convenio; (h) usted no nos proporcione la información que nosotros razonablemente consideremos necesaria; (i) usted nos proporcione información de terceros, incluyendo agencias de informes de crédito que indiquen alguna novedad al dato de baja con otros acreedores; (j) esté en incumplimiento de cualquier préstamo o convenio distinto que tenga con nosotros o cualquiera de nuestras afiliadas; (k) se traslade a un lugar fuera de los Estados Unidos o el Canadá o bien el proporcionarnos una dirección de correo que no pertenezca a los países mencionados; (l) usted quede (como tampoco nosotros) que exceda su límite de crédito; (n) su cheque de pago nos devuelto sin pagar por su Banco por el motivo que sea; (o) nosotros devolvamos sin pagar cualquier cheque de tarjeta de crédito; o (p) usted esté en incumplimiento bajo cualquier convenio o convenio de fianza distinto que tenga con nosotros o cualquiera de nuestras afiliadas.

Cuando ocurra el incumplimiento, nosotros tenemos el derecho de: (a) terminar sus privilegios de crédito bajo este Convenio; (b) terminar todo Plan de Crédito Promocional y convertir los saldos a un Plan de Crédito Normal; (c) exigirle que pague inmediatamente la totalidad del saldo de su Cuenta, incluyendo los saldos de los Planes de Crédito Promocionales, todos los Cargos de Financiamiento acumulados y sin pagar, así como los demás cargos dispuestos en este Convenio y (d) entablar una acción para cobrar las cantidades adeudadas.

**19. ARBITRAJE:** Toda demanda, disputa o controversia entre usted y nosotros (ya sea que se base en un contrato; hecho ilícito, intencional o de otra naturaleza; constitución; ley; derecho consuetudinario o de "equity"; ya sea ganado, presente o futuro) incluso demandas iniciales, contrademandas, demandas recíprocas y demandas de terceros, que surjan de este Contrato o estén relacionadas con él, o de las relaciones resultantes de este Contrato y, con excepción de lo dispuesto más adelante, la validez, exigencia de cumplimiento o alcance de esta cláusula de arbitraje, una parte de ella o la totalidad del Contrato ("Demanda"), se resolverá a su elección o la nuestra, mediante arbitraje vinculante conforme a lo dispuesto en esta cláusula y a las reglas o procedimientos aplicables del administrador de arbitraje que se seleccione en el momento de la presentación de la Demanda. La parte que inicie el procedimiento de arbitraje tendrá derecho a seleccionar uno de los siguientes administradores para el arbitraje (el "Administrador"): a) American Arbitration Association ("AAA") o el National Arbitration Forum ("NAF"). El árbitro deberá ser un abogado con más de diez años de experiencia, un juez jubilado o un ex juez. Convenimos en no invocar nuestro derecho de arbitrar una Demanda individual que usted pueda iniciar en tribunales de demandas menores o en un tribunal equivalente, siempre que la Demanda sea tramitada sólo en ese tribunal. Las normas y los formularios del AAA y el NAF se pueden solicitar escribiendo a dichas organizaciones a las direcciones que se detallan más abajo. Nuestro domicilio para la atención de proceso conforme a esta disposición es: Household Bank (SB) AA.A., P.O. Box 129, Mount Prospect, IL 60056.

Toda audiencia de arbitraje en la que usted esté presente se llevará a cabo en la ciudad más cercana a su residencia, donde haya un tribunal de distrito federal o en otra localidad que convengan las partes. Por cada Demanda que usted presente, deberá pagar los primeros $50 del arancel de presentación. Si usted lo solicita, pagaremos el resto de dicho arancel y los gastos administrativos y de los auditorios que se cobre el Administrador sobre toda Demanda que usted presente para arbitraje, hasta un máximo de $1, 500. En caso de que se le exija a pagar otros aranceles al Administrador, consideraremos su pedido de pagar la totalidad o parte de los aranceles adicionales, sin embargo, los extremos obligatorios a pagar aranceles adicionales, a menos que el fundo arbitral le resulte favorable a usted. Si el árbitro le otorga a usted un laudo favorable, le reintegraremos los aranceles adicionales pagados por usted o que usted deba al Administrador, hasta el monto que se habría cobrado si la Demanda original hubiera sido por el monto del laudo real a su favor. Las partes serán responsables de pagar los honorarios de sus respectivos abogados, excepto que sólo en el caso en el cual el árbitro establecido por la ley. Si una reglamentación o el derecho de recuperar cualesquiera de estos honorarios, o los aranceles pagados al Administrador, estos derechos reglamentarios se aplicarán al arbitraje sin perjuicio de que exista alguna cláusula en contrario en el presente. Si el laudo del árbitro nos favorece, usted no deberá reembolsarnos ningún arancel u honorario que hayamos pagado previamente al Administrador o por los cuales seríamos responsables.

Este convenio de arbitraje se aplica a una operación comercial que involucra el comercio interestatal y se regirá por la Ley Federal de Arbitraje, Código de los Estados Unidos 9, Artículos 1 a 16 ("FAA"). El árbitro aplicará el derecho sustantivo relevante conforme a la FAA y alguna de las partes lo solicita, proveerá por escrito las hallazgos fundamentales de hecho y las conclusiones de la ley. La sentencia sobre el laudo se podrá presentar en cualquier tribunal competente. El laudo del árbitro será definitivo y de cumplimiento obligatorio, excepto que: (a) cualquier derecho de apelación conforme a la FAA; y (b) cualquier apelación de Demandas que importen un monto superior a $100,000. En el caso de las Demandas mencionadas, cualquiera de las partes podrá apelar al laudo ante un panel de tres árbitros designado por el Administrador, el cual reconsiderará "de novo" (es decir, en su totalidad) cualquier aspecto o todos los aspectos del laudo inicial que sea apelado. La decisión del panel será definitiva y de cumplimiento obligatorio, excepto en el caso de cualquier derecho de apelación conforme a la FAA. A menos que la ley aplicable disponga lo contrario, la parte que interponga la apelación pagará los costos de la misma (es decir, los montos adeudados al Administrador y a los árbitros), independientemente de su resultado. Sin embargo, consideraremos de buena fe cualquier pedido razonable para que seamos responsables del pago de la totalidad de los costos de la apelación.

Este convenio de arbitraje mantendrá su vigencia después de la extinción de su Cuenta, así como el reembolso de todos los montos dados en préstamo conforme al presente. Si cualquier parte de este convenio de arbitraje se considerara no válida o no se pudiera exigir su cumplimiento en virtud de una ley o reglamentación conforme a la FAA, dicha parte no invalidará el resto de las disposiciones de este convenio de arbitraje ni del Contrato. En caso de conflicto o incongruencia entre las normas y los procedimientos del Administrador y este convenio de arbitraje, este último será el que rija. No obstante cualquier frase de esta cláusula de arbitraje que establezca lo contrario, la administración del arbitraje no podrá ser realizada, sin el consentimiento de todas las partes del arbitraje, por ninguna organización que cuente con una política formal o informal que (a) sea consistente con la cláusula de arbitraje, o bien con los que sean suprimidos, incluida la cláusula en la categoría de acciones colectivas a continuación. No se permitirán acciones colectivas y tampoco acciones privadas establecidas mediante procuración general en un tribunal o en arbitraje, como tampoco acumulación o consolidación de demandas con las de otras personas en un tribunal o en arbitraje, sin el consentimiento por escrito expreso de usted y por nosotros. La validez y el efecto de la cláusula anterior (en el presente denominada "cláusula de renuncia a la acumulación de acciones") serán determinados exclusivamente por un tribunal y no por el administrador o por un árbitro. Ni el administrador ni ningún árbitro tendrán la facultad o la autoridad de exceptuar, modificar o exigir el cumplimiento de la cláusula de renuncia a la categoría de acciones; cualquier laudo hecho en ese sentido, sea por norma, decisión de una política del arbitraje o de otro modo, no se considerará ni válido ni exigible en cuanto no podrá realizarse.

**LAS PARTES RECONOCEN QUE TIENEN DERECHO A LITIGAR EN UN TRIBUNAL ANTE UN JUEZ O JURADO, PERO QUE NO TENDRÁN TAL DERECHO SI ALGUNA DE LAS PARTES ELIGE EL MÉTODO DE ARBITRAJE. POR EL PRESENTE, LAS PARTES RENUNCIAN EN FORMA VOLUNTARIA E INTENCIONAL A SUS DERECHOS A LITIGAR EN UN TRIBUNAL ANTE UN JUEZ O JURADO EN CASO DE QUE CUALQUIERA DE ELLAS SELECCIONE EL ARBITRAJE.**

Usted puede comunicarse con el AAA o el NAF, para obtener las reglas de arbitraje o presentar una demanda a:

American Arbitration Association
335 Madison Avenue
New York, NY 10017
www.adr.org

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
www.naf-forum.org

Según se utiliza en esta cláusula de arbitraje, los términos "nosotros" y "nuestro" hacen referencia a Household Bank (SB), N.A., sus compañías matrices, subsidiarias, afiliadas, predecesores, sucesores, cesionarios y cada uno de los funcionarios, directores y empleados.

**20. CAMBIO DE TÉRMINOS:** Nosotros podemos cambiar o terminar cualquiera de los términos, condiciones, servicios o características de su Cuenta o de este Convenio (incluyendo el aumento de sus Cargos de Financiamiento) en cualquier momento. También podemos agregar nuevos términos, condiciones, servicios o características a su Cuenta o a este Convenio. Podemos imponer cualquier cambio en términos o en términos nuevos a su saldo pendiente, así como a las transacciones y saldos subsiguientes. En la medida en que lo exija la ley, nosotros le avisaremos de antemano en cuanto a todo cambio en términos o términos nuevos, enviándole un aviso a su dirección según se indica en nuestros libros. Todo cambio en la Tasa Porcentual Anual, conforme con las disposiciones sobre tasa variable de este Convenio, no será considerado cambio en términos bajo la presente.

**21. RESPONSABILIDAD POR USO NO AUTORIZADO:** Usted podría ser responsable del uso no autorizado de su Tarjeta. Usted conviene en avisarnos inmediatamente si enterase del uso no autorizado de su Tarjeta. Usted no será responsable del uso no autorizado que suceda después de que nos aviste verbalmente o por escrito. Nos puede avisar por escrito a Card Security Dept. P.O. Box 15521, Wilmington, DE 19850-5521, en cuanto a la pérdida, robo o posible uso no autorizado de su Tarjeta. En todos los casos, su responsabilidad no excederá los $50. Sin embargo, el uso no autorizado no incluye el uso por parte de una persona a quien usted haya autorizado a usar su Tarjeta, y usted será responsable de todo uso por dicha persona. Para terminar esta autorización tiene que retirarle la Tarjeta al usuario previamente autorizado y devolvérnosla a HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521, junto con una carta que nos explique las razones por las cuales toma dicha determinación.

**22. PÉRDIDA O ROBO DE LA TARJETA:** Usted acuerda notificarnos inmediatamente si le roban o se pierden su Tarjeta o si usted piensa que alguien está usando su Cuenta sin su permiso. Usted puede notificarnos por escrito a Card Security Dept. P.O. Box 15521, Wilmington, DE 19850-5521.

**23. CHEQUES DE TARJETA DE CRÉDITO PERDIDOS O ROBADOS:** Usted conviene en avisarnos inmediatamente si pierde o le roban algún cheque de tarjeta de crédito. Nos puede avisar por escrito a Card Security Dept., P.O. Box 15521, Wilmington, DE 19850-5521.

**24. SUSPENSIÓN DE PAGO:** Si antes de que se pague un cheque de tarjeta de crédito girado contra su Cuenta usted nos notifica que no lo pagaremos, suspenderemos su pago. Usted debe enviarnos una orden escrita y firmada de no pagar un cheque determinado, indicando el número, el beneficiario, la cantidad y la fecha del cheque cuyo pago debe suspenderse. Si llama por teléfono, usted debe confirmar la llamada por escrito dentro de 14 días. Nosotros podríamos hacer caso omiso de dicha orden seis meses después de haberla recibido a menos que nos renovada por escrito.

**25. CANCELACIÓN DE LA TARJETA:** Nosotros podemos cancelar o reducir su límite de crédito en cualquier momento y por cualquier motivo, sujeto a los requisitos de la ley aplicable. Los saldos pendientes bajo este Acuerdo cuando se reduce o cancela su límite de crédito, continuarán acumulando Cargos de Financiamiento hasta que el saldo sea pagado en su totalidad y están sujetos a todos los términos y condiciones de este Acuerdo. Usted acuerda devolvernos su(s) Tarjeta(s) en cualquier momento cuando se lo solicitemos.

**26. CIERRE DE SU CUENTA:** Usted puede cancelar o cerrar su Cuenta si escribimos a: Card Security Dept. P.O. Box 15521, Wilmington, DE 19850-5521. Su aviso entra en vigencia cuando lo recibamos. Si usted cancela o cierra su Cuenta, aún será responsable de las cantidades que se nos adeudan de acuerdo con los términos de este Convenio. Usted conviene en devolvernos su(s) Tarjeta(s).

**27. NORMAS DE EVALUACIÓN:** Usted conviene en que nuestro personal de supervisión puede escuchar y grabar las conversaciones telefónicas entre usted y nuestros representantes a fin de evaluar la calidad de nuestro servicio a usted y a otros clientes.

**28. LEY VIGENTE:** Este Convenio y su Cuenta serán regidos e interpretados por las leyes federales, incluyendo la Ley Federal sobre Arbitraje, y las leyes del Estado de Nevada, correspondiendo a conjuntos celebrados y a ser cumplidos allí sin referencia a los principios de conflictos de leyes. La legalidad, ejecución e interpretación de este Convenio y de las cantidades contratadas, cobradas y recibidas bajo este Convenio serán regidas por dichas leyes. Este Convenio se celebra entre usted y nosotros en Nevada. Nosotros tomamos decisiones en cuanto a la concesión de crédito a usted y le extenderemos el crédito bajo este Convenio desde Nevada. Las leyes federales y de Nevada corresponderán a toda controversia, reclamación o disputa que surja de o se relacione, de forma alguna con el asunto objeto de este Convenio o su Cuenta, incluyendo las reclamaciones estatutarias, de equidad y por agravio.

**29. INVESTIGACIÓN E INFORMES DE CRÉDITO:** Usted conviene en que nosotros podemos investigar sus historiales de crédito, empleo e ingresos y comprobar sus referencias de crédito y en que podemos dar a las agencias de informes de crédito, comerciantes y otros acreedores el estado y el historial de pago de su Cuenta.

**30. PRECISIÓN DISPUTADA DE UN INFORME DE CRÉDITO:** Si algún dato determinado relacionado con su Cuenta, las transacciones o la apariencia de crédito con nosotros no es preciso, nos puede avisar y solicitar que corrijamos la información imprecisa (después de confirmar el supuesto error) dado a cualquier agencia de informes de crédito, escribiéndonos a: HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521.

**31. INFORMACIÓN FINANCIERA ACTUALIZADA:** Usted acuerda darnos [ilegible] información financiera actualizada sobre usted cuando se la solicitemos.

**32. DEMORA EN LA TOMA DE ACCIONES:** Si por cualquier razón nos demoramos en tomar cualquier acción, no perderemos nuestros derechos bajo este Acuerdo. En la medida en que lo permita la ley, podríamos tomar otras acciones que no estén descritas en este Acuerdo, sin perder por ello nuestros derechos bajo este Acuerdo.

**33. CAMBIO DE NOMBRE, DIRECCIÓN O EMPLEO:** Usted conviene en darnos un aviso de 30 días de anticipación en cuanto a todo cambio en su nombre, dirección postal, número de teléfono o lugar de empleo. Usted conviene en que el Departamento de Vehículos Motorizados puede darnos su dirección residencial si fuere necesario localizarle.

**34. TRASPASO DE LA CUENTA:** Nosotros podemos vender, traspasar o transferir su Cuenta o cualquier parte de la misma sin notificárselo. Usted no puede vender, traspasar o transferir su Cuenta.

**35. DIVISIBILIDAD:** Si se determina que cualquier cláusula de este Acuerdo es nula o inejecutable bajo cualquier ley, regla o reglamento, todas las demás cláusulas de este Acuerdo permanecerán válidas y ejecutables.

**36. AVISO PARA RESIDENTES DE CALIFORNIA:** La ley de California exige que nosotros informemos a los clientes que si un completo con los términos de su obligación de crédito, se puede remitir a una agencia de informes de crédito un informe negativo que se refleje en su expediente de crédito. Si usted está casado(a), puede solicitar el crédito a nombre propio.

**37. AVISO A LOS RESIDENTES DE LA FLORIDA:** Usted (el prestatario) acuerda que, al someternos una sentencia en su contra, una parte de su ingreso disponible puede ser secuestrada o embargada (pagada a nosotros por su empleador), según lo dispone la ley de la Florida y la ley Federal.

**38. AVISO PARA LOS RESIDENTES DE MAINE:** Podríamos solicitar un informe de crédito con respecto a su solicitud de crédito. Usted puede preguntar si nosotros obtuvimos un informe de crédito y, en tal caso, nosotros le informaremos el nombre y la dirección de la agencia que emitió el informe.

**39. AVISO PARA RESIDENTES DE NEW YORK:** Se puede solicitar un informe de crédito sobre el consumidor relacionado con esta solicitud o con las actualizaciones, renovaciones o extensiones de todo crédito concedido como resultado de esta solicitud. A solicitud suya, se le informará si se solicitó dicho informe y, de haberse solicitado, el nombre y la dirección de la agencia que proporcionó el informe. Los residentes de New York, se pueden comunicar con el Departamento de Banca del Estado de New York a fin de obtener una lista comparativa de las tasas para tarjetas de crédito, sus recargos y servicios de gracia. Departamento de Banca del Estado de New York. 1-800-522-3330.

**40. AVISO PARA LOS RESIDENTES DE OHIO:** Las leyes de Ohio contra la discriminación exigen que todos los acreedores pongan el crédito a disposición de todas las personas solventes, sin distinción de naturaleza ó raza, y que las agencias de información de crédito mantengan historiales de crédito separados para cada individuo cuando esto se les solicite. La Comisión de Derechos Civiles de Ohio se encarga de hacer cumplir esta ley.

**41. AVISO PARA RESIDENTES DE VERMONT:** Se podrá solicitar un informe de crédito sobre el consumidor no relacionado con esta solicitud o en lo relacionado con actualizaciones, renovaciones o prórrogas de todo crédito concedido como resultado de esta solicitud. A petición, se le informará si se solicitó o no dicho informe y, de haberse solicitado, el nombre y la dirección de la agencia que proporcionó el informe.

La información referente a los costos de la Tarjeta que contiene este Convenio de Tarjetahabiente y la Declaración de Divulgaciones es precisa en marzo el 2005. Esta información tendrá cambiar después de esta fecha. Para conocer cualquier cambio, escríbanos a: 1111 Town Center Drive, Las Vegas, Nevada 89144.

## SUS DERECHOS DE FACTURACIÓN — GUARDE ESTE AVISO PARA SU FUTURO

Este aviso contiene información importante sobre sus derechos y nuestras responsabilidades bajo la Ley de Facturación Justa en Tarjeta Crédito.

**Notifíquenos en caso de haber errores o tener preguntas sobre su estado de cuenta:** Si su estado de cuenta contiene errores o si necesita más información sobre una transacción que aparece en su factura, escríbanos en una hoja separada a la dirección que aparece en su factura. Escríbanos lo antes posible. Es necesario que recibamos sus comentarios dentro del término de 60 días a partir de la fecha en que le enviamos la primera factura en que aparece el error o el problema. Puede llamarnos por teléfono, pero una llamada telefónica no protege su derecho.[...]
En su carta, ofrece la siguiente información:

- Su nombre y número de cuenta.
- El monto en dólares del supuesto error.
- Describa el error y explíquelo, si puede, por qué considera usted que hay un error.
- Si necesita más información, describa el ítem sobre el cual tiene dudas.

**Sus derechos y nuestras responsabilidades después de recibir su notificación por escrito:** Nosotros tenemos que reconocer que recibimos su carta dentro del término de 30 días, a menos que para entonces hayamos corregido el error. Dentro del término de 90 días tenemos que corregir el error o explicarle por qué creemos que el estado de cuenta estaba correcto. Después de recibir su carta, no podemos tratar de cobrarle ninguna parte del capital que usted ha cuestionado reportarle como deudor moroso. Podemos continuar facturándole la cantidad en duda, incluyendo cargos de financiamiento, y podríamos aplicar cualquier saldo pendiente contra su límite de crédito. Usted no tiene que pagar ninguna cantidad en duda mientras investiguemos, pero sigue estando obligado a pagar las partes de su factura que de las que tenga duda en duda. Si encontramos que cometimos un error en su factura, usted no tendrá que pagar cargos de financiamiento correspondientes con ninguna cantidad en duda. Si no cometimos ningún error, usted tendrá que pagar cargos de financiamiento y tener todos los pagos que no haya hecho correspondientes a la cantidad en duda. En cualquier caso, le enviaremos una declaración con la cantidad que nos debe y la fecha en que vence.

Si usted no paga la cantidad que nosotros consideramos que usted nos debe, podremos reportarlo como deudor moroso. Sin embargo, si nuestra explicación no lo satisface y usted nos escribe dentro del término de diez días informándonos que aún no está dispuesto a pagar, tendríamos que informar a cualquier entidad a la que enviemos un informe sobre usted, que usted tiene una factura sobre su factura. Y tendríamos que informarle a usted el nombre de cualquier entidad a la que enviemos un informe sobre usted. Cuando el asunto haya sido resuelto, tendríamos que informar sobre esto a cualquier entidad a la que hubiésemos enviado un informe sobre usted. Si no seguimos estas reglas, no podemos cobrar los primeros $50 de la cantidad en duda, aunque su factura estuviese correcta.

**Regla especial para compras hechas con Tarjeta de Crédito:** Si usted tiene algún problema con la calidad de un producto o servicios que usted compró con una tarjeta de crédito, y usted ha tratado de buena fe de corregir el problema con el comerciante, usted podría tener el derecho de no pagar el saldo restante correspondiente a dicho producto o servicios. Existen dos limitaciones a este derecho: (a) Usted debe propiedad hecho la compra en el estado donde reside o, si no lo hizo dentro del estado donde reside, dentro de un radio de 100 millas de su actual dirección y (b) El precio de compra debe haber sido superior a los $50. Estas limitaciones no son aplicables si nosotros somos dueños del establecimiento donde usted hizo la adquisición, operamos el mismo, o si nosotros le enviamos un anuncio con el producto o los servicios.

AG2282 (3-05)

**27. MONITORING PRACTICES:** You agree that our supervisory personnel may listen to and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardmembers.

**28. APPLICABLE LAW:** This Agreement and your Account shall be governed by and interpreted under federal law, including the Federal Arbitration Act, and the laws of the State of Nevada applicable to contracts made and to be performed entirely within Nevada, without reference to principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Nevada. We make decisions about granting credit to you from, and extend credit to you under this Agreement from, Nevada. Federal and Nevada law shall also apply to any controversy, claim or dispute arising from or relating in any way to this Agreement or matter of this Account and/or your Account, including statutory, equitable and tort claims.

**29. CREDIT INVESTIGATION AND REPORTING:** You agree that we may investigate your credit, employment and income records and verify your credit references and also may report to credit reporting agencies, merchants, and other creditors the status and payment history of your Account.

**30. DISPUTED ACCURACY OF CREDIT REPORT:** If any specific information related to your Account, transactions or credit experience with us is inaccurate, you may notify us and request us to correct the inaccurate information (after confirmation of the alleged error) reported to any credit reporting agency by writing to us at HSBC Retail Services, P.O. Box 15531, Wilmington, DE 19850-5531.

**31. UPDATED FINANCIAL INFORMATION:** Upon request, you agree to promptly give us accurate updated financial information about yourself.

**32. DELAY TAKING ACTION:** We will not lose any of our rights under this Agreement if we delay taking action for any reason. To the extent allowed by law, we may take other action not described in this Agreement, and by doing so will not lose our rights under this Agreement.

**33. CHANGE OF NAME, ADDRESS, OR EMPLOYMENT:** You agree to give us 10 days advance notice of any change in your name, mailing address, telephone number, or place of employment. You agree the Department of Motor Vehicles may release your residence address to us should it become necessary to locate you.

**34. ASSIGNMENT OF ACCOUNT:** We may sell, assign, or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account.

**35. SEVERABILITY:** If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule or regulation, all other provisions of this Agreement will remain valid and enforceable.

**36. NOTICE FOR CALIFORNIA RESIDENTS:** California law requires that we inform customers that should they fail to fulfill the terms of their credit obligation, a negative report reflecting on their credit record may be submitted to a credit reporting agency. If a report was obtained. You may apply for credit in your own name.

**37. NOTICE FOR FLORIDA RESIDENTS:** You (borrower) agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.

**38. NOTICE FOR MAINE RESIDENTS:** We may request a consumer report in connection with your application for credit. You may ask whether a consumer report was obtained by us and we will tell you the name and address of the consumer reporting agency, if a report was obtained.

**39. NOTICE FOR NEW YORK RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report. New York residents may contact the New York state banking department to obtain a comparative listing of credit card rates, fees and grace periods. New York State Banking Department: 1-800-522-3330.

**40. NOTICE FOR OHIO RESIDENTS:** The Ohio Laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**41. NOTICE FOR VERMONT RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

**The information about the costs of the Card described in this Cardholder Agreement and Disclosure Statement is accurate as of March, 2005. This information may have changed after that date. To find out what may have changed write to us at 1111 Town Center Drive, Las Vegas, Nevada 89144.**

## YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- Describe the error and explain, if you can, why you believe there is an error

If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## Español

AVISO PARA LOS RESIDENTES DE WISCONSIN CASADOS: Ninguna disposición de un convenio sobre bienes matrimoniales (incluyendo un Convenio de Clasificación de Bienes Maritales Terminable Estatutariamente bajo la Sec. 766.588 de los Estatutos de Wisconsin, de un Convenio de Clasificación de Bienes Personales Terminable Estatutariamente bajo la Sección 766.70) tiene un efecto adverso para los intereses del acreedor, a menos que el acreedor, antes del nacimiento en que se concede el crédito, reciba copia del convenio, relación o decreto, o tenga conocimiento real de la disposición adversa cuando se contrae la obligación para con el acreedor.

## ACUERDO DE TARJETAHABIENTE Y DECLARACIÓN INFORMATIVA

**1. GENERAL:** Cada persona que firme y remita o que remita electrónicamente o inalámbricamente una solicitud de cuenta de tarjeta de crédito ("Cuenta") como solicitante o co-solicitante, solicita una cuenta con Household Bank (SB), N.A., una asociación bancaria nacional domiciliada en Las Vegas, Nevada, y solicita una o más tarjetas de crédito en el nombre y el logotipo del Banco para que sea(n) usada(s) en relación con la Cuenta. La palabra "Tarjeta" significa cualquier tarjeta de crédito emitida a usted o a un usuario autorizado de su Cuenta. Las roba. La palabra "usted" y "su" se refieren a todas las personas mencionadas en la solicitud de tarjeta de crédito y las palabras "nosotros", "nos" y "nuestro" se refieren a Household Bank (SB), N.A. domiciliado en 1111 Town Center Drive, Las Vegas, Nevada 89144.

Si nuestro aceptamos su solicitud para abrir una Cuenta, usted consiente en que comprará bienes y servicios solamente para bienes personales, familiares y domésticos, a las convenientes que acepten la Tarjeta.

**2. ACEPTACIÓN DEL CONVENIO:** Al a) firmar y remitir o que remitir electrónicamente o telefónicamente la solicitud, usar o permitir a otros que usen la Tarjeta; b) firmar o permitir a otros que firmen recibos de ventas; o c) hacer o permitir a otros que hagan compras por teléfono, internet u otros medios — usted consiente en los términos y condiciones del Convenio de Tarjetahabiente y de Declaración Divulgatoria que incluye una disposición general del arbitraje.

**3. PROMESA DE PAGO:** Usted consiente en pagar toda cantidad cargada a su Cuenta, ya sea cobrada por usted o por cualquier persona a la que usted autorice a operar usar su Cuenta o Tarjeta. Si la Cuenta es una Cuenta mancomunada, el solicitante y el solicitante conjunto, cada cual, convienen en pagar y son responsables mancomunadamente y solidariamente de todas las cantidades cargadas a la Cuenta. Independientemente de un divorcio u otro procedimiento legal o acuerdo que afecte la responsabilidad entre el solicitante y el solicitante conjunto. Si uno de ustedes nos da aviso de que terminará a su responsabilidad por las cantidades adeudadas bajo este Convenio, nosotros podremos cerrar la Cuenta. En ese caso, usted seguirá pagando el saldo pendiente bajo los términos de este Convenio. No obstante, usted no podrá efectuar cargos nuevos a la Cuenta.

**4. CAPACIDAD PARA PAGAR:** Cuando usted usa la Cuenta o permite a otras personas que usen la Cuenta, usted declara que tiene la capacidad y el propósito para pagar todas las sumas cargadas a la cuenta.

**5. ESTADO DE CUENTA:** Nosotros le enviaremos mensualmente un estado de cuenta por cada ciclo de facturación en que tenga un saldo de débito o crédito en exceso de $1.00, o en que

## BILL OF SALE

This BILL OF SALE (the "Bill of Sale") dated May 1, 2012, is by and among HSBC Finance Corporation, a Delaware corporation, HSBC Retail Services, Inc., a Delaware corporation, HSBC Bank Nevada, N.A., a national banking association, HSBC Card Services Inc., a Delaware corporation, HSBC Receivables Acquisition Company I, a Delaware corporation and HSBC Receivables Funding Inc. II, a Delaware corporation (each, a "Transferring Entity"), in favor of Capital One, National Association, a national banking association ("CONA"), and Capital One Bank (USA), National Association, a national banking association ("COBNA"). Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Agreement (as defined below).

WHEREAS, each of CONA and COBNA is a wholly owned Subsidiary of Capital One Financial Corporation ("Purchaser");

WHEREAS, Purchaser, HSBC Finance Corporation, HSBC USA Inc. and HSBC Technology & Services (USA) Inc. are parties to that certain Purchase and Assumption Agreement, dated as of August 10, 2011 (the "Agreement");

WHEREAS, pursuant to Section 2.1(a) of the Agreement, effective as of the Effective Time, each Seller, as applicable, is to sell, convey, transfer, assign and deliver to Purchaser, or cause one or more of its Subsidiaries to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser is to purchase and accept from each Seller or its applicable Subsidiaries, all of each such Selling Entity's right, title and interest in, to and under the Acquired Assets that are tangible personal property (the "Applicable Acquired Assets");

WHEREAS, pursuant to Section 10.2 of the Agreement, Purchaser may assign its right under the Agreement to acquire any asset to any wholly owned Subsidiary without the prior written consent of any other party to the Agreement and has assigned its right to acquire the Applicable Acquired Assets to CONA or COBNA, as applicable; and

WHEREAS, pursuant to Sections 3.2(c) and 3.3(b) of the Agreement, the parties desire to execute and deliver at the Closing this Bill of Sale to evidence the sale, conveyance, transfer, assignment and delivery of the Applicable Acquired Assets owned by the Transferring Entities to Purchaser and/or its wholly owned Subsidiaries as of the Closing Date.

NOW, THEREFORE, in consideration of the payment by Purchaser and/or its wholly owned Subsidiaries of the Purchase Price and the assumption by Purchaser and/or its wholly owned Subsidiaries of the Assumed Liabilities for the sale, conveyance, transfer, assignment and delivery of the Acquired Assets owned by the Selling Entities, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Transferring Entity, intending to be legally bound, does hereby sell, convey, transfer, assign and deliver to CONA and COBNA, and their successors and assigns, in accordance with the allocations set forth on Annex A hereto, all of such Transferring Entity's right, title and interest in, to and under the Applicable Acquired Assets owned by it free and clear of all Liens (except for Permitted Liens); TO HAVE AND TO HOLD unto CONA and COBNA (in accordance with the allocations set forth on Annex A hereto), their successors and assigns, as applicable, to their own use and benefit forever, all of the Applicable Acquired Assets hereby sold, assigned, transferred, conveyed and delivered as of the Closing.

THE PARTIES FURTHER COVENANT AND AGREE AS FOLLOWS:

a.     From time to time each Transferring Entity and its successors and assigns shall, and shall cause its Subsidiaries to, without further consideration, cooperate, execute and deliver all such further bills of sale, assignments or other instruments of conveyance and transfer, and take such actions, all as may be reasonably requested by CONA and COBNA, and their successors or assigns, in order to carry out the sale, assignment, conveyance, transfer and delivery of the Applicable Acquired Assets covered by this Bill of Sale as contemplated in this Bill of Sale and the Agreement.

b.     This Bill of Sale shall become effective as of the Effective Time at the Closing pursuant to the terms of the Agreement. Nothing in this Bill of Sale shall be deemed to constitute an agreement to sell, convey, transfer, assign or deliver to Purchaser or its Subsidiaries any Applicable Acquired Asset (or portion thereof) prior to the Effective Time.

c.     This Bill of Sale is given pursuant to the provisions of the Agreement and the sale, conveyance, transfer, assignment, and delivery of the Applicable Acquired Assets hereunder are made subject to the terms and conditions of the Agreement and shall be construed consistently therewith. Nothing in this Bill of Sale, express or implied, is intended to or shall be construed to supersede, modify, replace, amend, rescind, waive, expand or limit in any way the rights of the parties under, and the terms of, the Agreement. In the event that any provision of this Bill of Sale is construed to conflict with a provision in the Agreement, the parties agree that the provision in the Agreement shall be controlling.

d.     The following Sections of the Agreement are incorporated into this Bill of Sale by reference, to be applied and construed consistently with the application of such Sections in the Agreement as if such Sections were set forth herein: Sections 10.1, 10.2, 10.3, 10.4, 10.5, 10.6, 10.7, 10.10 and 10.13.

*[Signatures Appear on the Following Page]*

IN WITNESS WHEREOF, the parties have executed this Bill of Sale as of the date first written above.

*[signature pages have been distributed separately]*

HSBC FINANCE CORPORATION

By: _____
Name: Gregory T. Zeeman
Title:  Executive Vice President and
        Chief Operating Officer, USA

HSBC RETAIL SERVICES INC.

By: _____
　　Name: Mike Reeves
　　Title:　Executive Vice President, Chief Financial
　　　　　　Officer and Treasurer

HSBC BANK NEVADA, N.A.

By: _____
　　Name: Mike Reeves
　　Title:　Executive Vice President, Chief Financial
　　　　　　Officer and Treasurer

*[Signature Page to Bill of Sale]*

*[Signature Page to Bill of Sale]*

HSBC CARD SERVICES INC.

By: _____
　　Name: Mike Reeves
　　Title:　Executive Vice President, Chief Financial
　　　　　　Officer and Treasurer

HSBC RECEIVABLES ACQUISITION COMPANY I

By: _____
　　Name: Mike Reeves
　　Title:　Executive Vice President, Chief Financial
　　　　　　Officer and Treasurer

*[Signature Page to Bill of Sale]*

*[Signature Page to Bill of Sale]*

HSBC RECEIVABLES FUNDING INC. II

By: _____
    Name: Mike Reeves
    Title: Executive Vice President, Chief Financial
          Officer and Treasurer

CAPITAL ONE NATIONAL ASSOCIATION

By: _____
    Name: Murray P. Abrams
    Title: Executive Vice President,
          Corporate Development

*[Signature Page to Bill of Sale]*

*[Signature Page to Bill of Sale]*

CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION

By: _____
    Name: Murray P. Abrams
    Title: Executive Vice President,
          Corporate Development

*[Signature Page to Bill of Sale]*

## Annex A

### Allocations

1.    The following Applicable Acquired Assets are hereby assigned to COBNA but only to the extent such Applicable Acquired Assets relate to the products set forth on Schedule A hereto (provided that any such Applicable Acquired Asset that is not fully separable between COBNA and CONA based on the products set forth on Schedule A shall not be assigned to COBNA and is instead hereby assigned to CONA in accordance with paragraph (2) below):

*Acquired Assets*

    i.    All CRS Accounts and all Gross Receivables and Accrued Interest and Fees related to the CRS Accounts, and all Charged Off Accounts and the right to any recoveries or collections with respect thereto;

    ii.    All CRS Account Agreements, pending applications for CRS Accounts and outstanding solicitations for CRS Accounts;

    iii.    All loans associated with CRS Accounts (other than the Excluded Accounts);

    iv.    The right to receive Interchange Fees and annual or other fees from Borrowers under the CRS Accounts, including the pro rata portion of any annual or other fees from Borrowers under the CRS Accounts for any period after the Effective Time;

    v.    The pro rata portion of any fees paid in connection with the CRS Business for any period after the Effective Time;

    vi.    the Books and Records and Cardholder List;

    vii.    All BINs and ICAs used for the CRS Accounts;

    viii.    Any security deposits related to Acquired Assets (if any);

    ix.    Rights to provide the Enhancement Services and the right to provide enhancement services currently offered by the Sellers in connection with the CRS Business through third parties or Affiliates of Sellers that are not Selling Entities; and

    x.    The Other Specified Assets that are: (1) loans without recourse, (2) contra credit balances, (3) other miscellaneous receivables and (4) unbilled and accrued interest less the pro rata portion of annual or other fees.

2.    All of the Applicable Acquired Assets other than (i) the Transferred Intellectual Property and (ii) the Applicable Acquired Assets that are transferred to COBNA pursuant to paragraph (1) above are hereby transferred to CONA.

<u>Schedule A</u>

**Products**

1. American DreamCard
2. Cash Rewards
3. Client 5221
4. DAMARK (containing the Damark Visa logo but not the Damark Internat'l – Inactive logo)
5. Direct Merchants Bank Discover Network Card
6. Direct Reward Platinum Discover Network Card (Organic & Secondary)
7. Direct Rewards Platinum MasterCard
8. DMB
9. Household Bank
10. Household Bank – unsecured
11. Household Bank MasterCard (containing the HSBC MasterCard logo but not the Household Bank MasterCard logo)
12. Household Bank Refund Rewards Buying Card
13. Household Bank Secured
14. Household Bank Visa
15. HSBC
16. HSBC American Express
17. HSBC Discover Network Card
18. HSBC Platinum MasterCard
19. HSBC Platinum Visa
20. Metris Co
21. Orchard Bank Standard Secured
22. Orchard Bank Unsecured
23. Platinum MasterCard – Unbranded
24. Platinum Visa – Unbranded
25. Premier World MasterCard
26. Red Hat Society